[Cite as *Mar Jul, L.L.C. v. Hurst*, 2013-Ohio-479.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| MAR JUL, LLC, | : | |
| Plaintiff-Appellant, | : | Case No. 12CA6 |
| vs. | : | |
| BERNARD W. HURST, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT: John E. Triplett, Jr., and Daniel P. Corcoran, THEISEN BROCK, 424 Second Street, Marietta, Ohio 45750

COUNSEL FOR APPELLEES: Ethan Vessels, FIELDS, DEHMLOW & VESSELS, LLC, 309 Second Street, Marietta, Ohio 45750

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 2-6-13
ABELE, J.

{¶ 1} This is an appeal from a Washington County Common Pleas Court summary judgment in favor of Bernard W. Hurst, defendant below and appellee herein. Mar Jul LLC, plaintiff below and appellant herein, assigns the following error for review:

> "THE TRIAL COURT ERRED IN GRANTING SUMMARY
> JUDGMENT TO DEFENDANT-APPELLEE BECAUSE THERE
> WERE DISPUTED ISSUES OF MATERIAL FACT."

{¶ 2} In 2006, appellant, which is owned by Mark and Julie Haessly, paid $1,382,500 to

purchase commercial real estate from appellee in an "as is" condition.   As part of the transaction, appellee assigned the leases for the occupied commercial properties to appellant.

{¶ 3}   After appellant took possession of the property, it began to discover problems with the real estate and the leases.   For example, appellant observed that a building's foundation appeared sunken.   Appellant also learned that the real estate lacked a water supply.   With respect to the leases, appellant discovered that (1) some tenants paid less rent than it had been led to believe, and (2) not all tenants intended to renew their leases.

{¶ 4}   On August 5, 2010, appellant filed a complaint that alleged fraud, and breach of contract and express and implied warranties.   Regarding the fraud claims, appellant alleged that appellee (1) concealed a material fact by failing to disclose the faulty and defective foundation of one of the buildings; (2) falsely represented the amount of rental income generated; and (3) falsely represented the duration of the current leases.   With respect to the breach of contract and express and implied warranties claim, appellant claimed that appellee (1) expressly and impliedly asserted that the property rental value was greater than its true value; and (2) misrepresented the condition of the property and the propriety of the property for its intended purpose.   Appellant asserted that "[t]he failure of the property and rentals to conform to [appellee's] representation constitutes a breach of contract."

{¶ 5}   On March 4, 2011, appellee requested summary judgment and   alleged that appellant's fraud claim regarding the physical defects fails as a matter of law because (1) the property was sold "as is;" and (2) no genuine issues of material fact remain as to whether appellee fraudulently misrepresented or concealed the physical condition of the property.   Appellee contended that no evidence exists that appellee made any statements regarding the lease renewals

or amounts, and that even if he did, no evidence exists that the statements were false.   Appellee further argued that appellant could not demonstrate that it justifiably relied upon any alleged false statement when it did not look at the leases before agreeing to purchase the real estate or before signing the closing documents.   Appellee additionally argued that the statute of limitations bars appellant's fraud claims.   He contended that because any alleged fraudulent statements must have occurred before appellant signed the June 15, 2006 purchase agreement, appellant's August 5, 2010 complaint falls outside the four-year statute of limitations that governs fraud claims.

{¶ 6}   In its response, appellant argued that the statute of limitations did not bar its claim because it did not discover the fraud until after the sale, which appellant claimed occurred on August 8, 2006.   Appellant also disputed appellee's claim that the "as is" clause barred its fraud claim because appellee engaged in active misrepresentation or concealment.

{¶ 7}   To support their respective arguments, the parties referred to Mark Haessly's and appellee's depositions.   Appellant further presented three affidavits, one from the Pastor of Blaze of Glory Worship Center (Charles Hall), one from the person who built the daycare building (David Burt), and one from Haessly (a principal in Mar Jul LLC).

{¶ 8}   At his deposition, Haessly stated that "several months" after appellant purchased the real estate, he discovered problems with the daycare building foundation.   Haessly explained that the back portion of the building "looks * * * like the ground work was not done right" and when the ground began to sink, so did the building.   Haessly testified that he inspected the property before purchasing it, but that he did not get a "good look inside."   Haessly explained that appellee had requested him "not to go back" to the daycare center, but admitted that appellee did nothing "to prohibit [him] from making a more intense inspection of the foundation."   Haessly stated that

he viewed the outside of the building, but further stated that appellee "basically more or less he would just drive us around" and Haessly did not look at anything up close.   Haessly also stated that he did not hire an inspector and explained that he could have inspected the building more thoroughly if "appellee would have let" him.

{¶ 9}   Appellee's counsel questioned Haessly about whether appellee prohibited Haessly from inspecting the building.   Haessly responded:   "I can't just say no, he wouldn't let us, but he said that he didn't want us talking to nobody, not to interfere when–hours–this place was open I don't know about 24 hours a day at the time, but it was close to it."   When asked whether appellee prevented him from looking at the foundation of the building, Haessly stated that "you couldn't really tell * * * at that time" whether the foundation had sunk.   When asked if appellee did "anything to prohibit [him] from making a more intense inspection of the foundation," Haessly stated: "I would have to say no, but I didn't know there was a problem."

{¶ 10}  Appellee's counsel asked Haessly whether appellee "ever actively sa[id] anything to [Haessly] one way or the other about foundations or concrete before the purchase."   Haessly responded, "He just said that the buildings was fairly new and they was all in good shape. [sic]"   When asked whether "the condition of the foundation was able to be discovered if it had been inspected before [appellant] signed the purchase contract," Haessly responded, "I would have thought an inspector would have found it, yes."

{¶ 11}  With respect to the leases, Haessly testified that appellee informed him that the church would be "good for another five years.   That would be another lease of five years.   The lease was for five years."   Haessly admitted that he did not look at the written leases, but explained that he did not do so "because [appellee] didn't give them to us."   Haessly also stated

that he did not request to see the leases.   Haessly stated that he knew the church's lease expired in November, but appellee informed him "not to worry about it," that "[t]hey're good for another five years."   Haessly also testified that appellee told him not to talk to anyone at the church.

{¶ 12} Haessly stated that appellee informed him about the leases, (i.e., how much rent and "the automatic renewal") and that appellee provided him with a sheet of paper that listed the rental amounts.   Haessly noted that the rents the tenants paid to Haessly after he took possession differed from both appellee's listed amounts and the contractual amounts.   Haessly further explained that appellee also told him that the leases were "automatically renewed."

{¶ 13} Haessly also testified that appellee told him that Grandma's Catering was "good for another year."   After appellant purchased the property, however, Grandma's Catering called Haessly and stated, "Did you know that I had already told [appellee] months ago that I was leaving?"   Haessly stated that the owner of Grandma's Catering sent him "a copy of the certified letter" that the owner sent to appellee.[1]   Haessly further stated that appellee lied about the rental income from the church.   Appellee advised Haessly that it was $3150, but that it was actually $2850.

{¶ 14} In his deposition, appellee stated that the church was constructed in 2001 and the daycare facility in 2003.   He testified that before June 2006, he was not aware of any problems with the daycare building foundation, but he knew that the building was built "out of square" or "crooked."   Appellee explained that when the kitchen cabinets were installed, the contractor informed appellee that the cabinets would not level.   Appellee spoke with David Burt, who

---

[1] Although appellant referenced this letter as being attached to one of his filings, we have not been able to locate a copy of this letter in the record transmitted on appeal.    The letter also is listed as an exhibit to appellee's deposition.

constructed the buildings, but decided not to "do anything about it" because "[i]t didn't hurt the overall structure of the building." Appellee explained that he did not believe that either the daycare or church foundation was "in poor condition or in need of repair."

{¶ 15} Appellee stated that when appellant purchased the property, the well that supplied water to the daycare and church was not located on the property. He testified that he informed appellant that the well was not on the church/daycare property and that the buildings did not have any water supply.

{¶ 16} Regarding the leases, appellee testified that in 2005, Pastor Hall advised appellee that the church would renew its lease for another five years upon the expiration of its current five-year term. Appellee explained that in 2006, Hall, who also leased the daycare, defaulted on the daycare lease. Appellee testified that he informed appellant in March or April 2006 that the daycare lessee had defaulted. Appellee stated that when Hall defaulted, he did not know whether Hall would renew the church lease. Appellee also testified that Hall did not tell him that the church would not renew the lease. Appellee explained that if Hall averred that he told appellee before the August 2006 closing that the church did not intend to renew its lease, then Hall "would be misrepresenting the truth." He further stated that he "disclosed to [appellant] throughout the whole process of every change that took place in the mall or the church and day care."

{¶ 17} Appellee also explained that he informed appellant that the daycare paid $3,150 in rent and the church paid $2,500. Appellee testified that he had shown appellant the leases and had discussed the lease issues with appellant. He stated that he prepared an income potential

statement for the rental properties and faxed it to appellant in April 2007.[2]

{¶ 18}  Appellee stated that the day after closing on the property, he informed appellant that Grandma's Catering would not be renewing its lease.   Later, however, he stated that he informed appellant before the closing that Grandma's Catering had provided written notice that it would not renew its lease.   Appellee admitted that he requested appellant "not to approach the tenants up until [appellant] decided whether [appellant] wanted to buy the property or not."   He explained that appellant could speak with the tenants after it signed the purchase agreement.

{¶ 19}  In his affidavit, the pastor stated that he informed appellee before June 2006 that the church would not renew its lease beyond October 2006.

{¶ 20}  In his affidavit, Burt stated that after he constructed the building, appellee alleged that the building was not properly constructed and that issues existed with the fill work and the foundation.   Burt averred, however, that a study had shown that appellee's excavation or backhoe work caused the foundation issue.

{¶ 21}  Haessly's affidavit further stated that: (1) appellee did not disclose that the daycare building "was out of square"; (2) appellee did not advise appellant that the water supply to the church and daycare was not a municipal water supply or on the premises; (3) appellee specifically represented to appellant that the church and daycare buildings had city water; (4) appellee failed to advise appellant that the church would not be renewing its lease; (5) appellee did not inform appellant that the church or daycare had been in default of the lease; (6) appellee did not make the

---

[2]  Although the deposition testimony states that appellee faxed the document in April 2007, the context suggests that "2007" is either a misstatement or a misprint and that it should be April 2006.    Furthermore, although this document is listed as an exhibit to appellee's deposition, it is not in the record.

written leases available until after closing; (7) appellee did not inform appellant about any verbal rental agreement modifications; (8) appellee did not advise appellant until after the closing that Grandma's Catering would be moving; and (9) during the closing, appellee assured appellant that all of the leases were current and that he did not foresee problems renewing the leases.

{¶ 22} On December 13, 2011, the trial court entered summary judgment in appellee's favor. Regarding "the issue of the leases," the court noted that appellee argued that appellant did not request to see the leases and that it was free to contact the lessees. The court also determined that the alleged physical defects were capable of being "discovered upon inspection." The court further concluded appellant failed to plead with particularity his fraud claims relating to all physical conditions of the property, except the foundation issue. The court thus determined that appellant's failure to properly plead the alleged fraudulent statements with respect to the other physical defects was "fatal to them." The court consequently concluded that no genuine issues of material fact remained and that appellee is entitled to judgment as a matter of law.[3]

{¶ 23} On December 23, 2011, the trial court entered a final judgment granting appellee summary judgment and dismissing the case. This appeal followed.

---

[3] The trial court did not provide a specific rationale for entering summary judgment in appellee's favor regarding (1) appellant's claim that appellee committed fraud in relation to the leases or (2) regarding appellant's breach of contract/warranty claim. We note, however, that a court need not provide specific reasons in a summary judgment decision. E.g., Civ.R. 52.

**{¶ 24}** In its sole assignment of error, appellant asserts that the trial court improperly entered summary judgment because genuine issues of material fact remain regarding its fraud claims.[4]   Appellant argues that genuine issues of material fact remain as to whether appellee (1) fraudulently misrepresented or concealed the physical condition of the property, (2) fraudulently misrepresented that the real estate had city water and that the daycare building was "fairly new" and "in good shape," and (3) fraudulently misrepresented the amount of rent that the leased properties generated and the renewal of the leases.

**{¶ 25}** Appellee asserts that the purchase agreement's "as is" clause bars appellant's claim that appellee failed to disclose the alleged physical defects when appellant could have observed the alleged defects upon a reasonable inspection and when appellee did not engage in active fraud or concealment.   With respect to appellant's claim that appellee misrepresented the church's lease renewal, appellee argues that appellant cannot establish that appellee knew any such statement was false.   Regarding the lease amounts, appellee first contends that appellant failed to produce documentary evidence that appellee misrepresented the lease amounts and next argues that, even if he made any statements regarding the lease amounts, appellant cannot demonstrate that it justifiably relied upon those statements.   Appellee asserts that appellant should not have relied upon any verbal assertions, but instead, it should have reviewed the leases.

---

[4] Appellant has not argued on appeal that the trial court improperly entered summary judgment in appellee's favor regarding its breach of contract claim.    We observe, however, that an "as is" clause in a contract can bar a breach of contract claim.    Rodgers v. Sipes, 3rd Dist. No. 3-11-19, 2012-Ohio-3070, 2012 WL 2553921, ¶41; Tutolo v. Young, 11th Dist. No. 2010−L−118 2012−Ohio−121, ¶52.

**{¶ 26}** Appellee also argues that the statute of limitations bars appellant's claims because any alleged wrongdoing occurred before August 4, 2006, and that appellant's August 5, 2010 complaint falls outside the four-year statute of limitations applicable to fraud claims.[5] Appellee further argues that appellant should have discovered any alleged fraud before August 5, 2010. Appellee argues that appellant should have discovered any alleged fraudulent statements regarding the property's physical condition when he inspected the property. He further asserts that appellant should have reviewed the written leases and discovered any alleged fraudulent statements regarding the lease agreements before signing the purchase agreement and closing documents.

A

SUMMARY JUDGMENT STANDARD

**{¶ 27}** Appellate courts review trial court summary judgment decisions de novo. E.g., Grafton v. Ohio Edison Co., (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. E.g., Brown v. Scioto Cty. Bd. of Commrs., (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley, (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786. Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law. Civ.R. 56(C) provides:

---

[5] Appellee did not raise any argument whether the four-year statute of limitations bars appellant's breach of contract/warranty claim. We therefore do not address whether the statute of limitations bars appellant's breach of contract claim. Instead, we consider only the argument raised: that the statute of limitations bars appellant's fraud claims.

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 28} Accordingly, a court may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. E.g., Vahila v. Hall, (1997), 77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164.

B

STATUTE OF LIMITATIONS

{¶ 29} We first address appellee's argument that the statute of limitations bars appellant's fraud claims. Appellee argues that because any alleged fraud occurred before August 4, 2006, appellant failed to file its August 5, 2010 fraud complaint within the four-year statute of limitations.

{¶ 30} Appellant, however, contends that its fraud cause of action did not accrue until August 5, 2006 at the earliest, when the parties closed on the property. Appellant further argues that the discovery rule applies and that genuine issues of material fact remain as to when it

discovered, or should have discovered, the fraud, thus making summary judgment inappropriate.

{¶ 31} R.C. 2305.09(C) requires a fraud claim to be brought within four years after the cause of action accrued.   The statute further states that a cause of action for fraud does not accrue until it is discovered.   Id.   ("If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.").   The Ohio Supreme Court interpreted this discovery rule to mean that a cause of action for fraud does not accrue until the plaintiff discovered, or should have discovered, the fraud.   Investors REIT One v. Jacobs, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989), paragraph 2b of the syllabus.

{¶ 32} When a plaintiff discovers, or should have discovered, an   alleged fraud usually constitutes a question of fact that precludes summary judgment.   McDougal v. Vecchio, 8th Dist. No. 98003, 2012-Ohio-4287, ¶18, citing Thut v. Thut, 11th Dist. No. 2000–G–2281 (Apr. 13, 2001).   Accord Hamilton v. Ohio Sav. Bank, 70 Ohio St.3d 137, 140, 637 N.E.2d 887 (1994) (stating that when alleged fraud was or should have been discovered "necessarily involves questions of fact that preclude summary judgment").   "Absent actual awareness, the standard to determine when a person should be aware of the fraud is when he or she possesses 'facts sufficient to alert a reasonable person to the possibility of wrongdoing.'"   Palm Beach Co. v. Dun & Bradstreet, Inc., 106 Ohio App.3d 167, 171, 665 N.E.2d 718 (1st Dist. 1995), quoting NASA Tool Mfg. Corp. v. Cincinnati Milacron Inc., Clermont App. No. CA86–07–044, (Aug. 31, 1987). """Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false security to toll the statute.""" Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes, 176 Ohio App.3d 54,

74, 2008-Ohio-1490, 889 N.E.2d 1066 (3rd Dist.), ¶34, quoting Aluminum Line Prods. Co. v. Brad Smith Roofing Co., Inc., 109 Ohio App.3d 246, 260, 671 N.E.2d 1343 (8th Dist. 1996), quoting Au Rustproofing Ctr. v. Gulf Oil Corp., 755 F.2d 1231, 1237 (C.A.6, 1985).   "If by an ordinary degree of prudence the fraud could have been discovered, such opportunity is equivalent to knowledge."   Bossey v. Al Castrucci, Inc., 105 Ohio App.3d 666, 669, 664 N.E.2d 1301 (2nd Dist. 1995), quoting Kettering v. Berger, 4 Ohio App.3d 254, 261, 448 N.E.2d 458 (2nd Dist. 1982).

{¶ 33} In the case at bar, appellant's complaint alleges that appellee made false statements "[p]rior to the sale" and that appellant was unaware of their alleged falsity.   In its summary judgment opposition memorandum, appellant asserted that it did not become aware of the falsity of the statements until after the closing date.   Appellant argued that "troubles" did not "appear" until after appellant took possession.   Appellee countered that appellant should have, in the exercise of reasonable diligence, discovered any alleged fraud before June 15, 2006, when it signed the purchase agreement.   Appellee asserted that if appellant had properly inspected the property and the leases, it would have discovered any alleged wrongdoing.

{¶ 34} We believe that genuine issues of material fact remain regarding whether the facts should have alerted appellant to the possibility of wrongdoing.   Although we agree that a real estate purchaser should inspect property before purchasing it, and when a purchase includes leases, the purchaser also should inspect the leases.   In the present case, however, appellant has alleged that appellee engaged in practices that inhibited its ability to inspect the property.   One might think that when a seller specifically requests a buyer not to speak to tenants or not to look in a certain area of a building, then the buyer should be alerted to the possibility of fraud.   We, however, are unable to state that in the instant case, that appellee's conduct necessarily should have

led appellant to believe appellee was engaging in wrongdoing. Appellant apparently believed that appellee offered a rational explanation for his requests: to avoid disrupting the tenants and the business operations. Thus, appellee's actions should not have necessarily alerted appellant to the possibility of wrongdoing. Instead, we believe that this question should be reserved to the factfinder.

{¶ 35} Appellee additionally suggests that appellant failed to exercise ordinary prudence by failing to engage a professional real estate inspector. However, even had appellant engaged a professional inspector, no guarantee exists that the inspector would have uncovered the conditions that appellant now complains. Not every real estate inspection will reveal every physical defect, especially if a seller conceals them. Thus, we cannot state, as a matter of law, that appellant, by exercising ordinary prudence, could have discovered the alleged fraud.

{¶ 36} Appellee also asserts that if appellant had exercised ordinary prudence and had examined the leases before it signed the purchase agreement or the closing documents, it would have been alerted to the possibility of wrongdoing. Appellee readily admits, however, that the written leases varied from the verbal agreements that he had apparently reached with certain tenants. Moreover, even if the leases correctly stated the lease terms and termination dates, appellee, according to appellant, explicitly informed it that one tenant would be renewing its lease. Appellee further failed to inform appellant that another tenant had decided not to renew the lease when appellee had previously led appellant to believe that the tenant would be renewing the lease. Thus, if appellant had reviewed the written leases, the leases would not have revealed the verbal modifications and the verbal and separately-written notices that the tenants had provided appellee. Thus, reviewing the written leases would not have alerted appellee to the possibility of

wrongdoing.

{¶ 37} Consequently, given the circumstances in the case at bar, it appears that genuine issues of material fact remain concerning whether appellant discovered, or should have discovered, the alleged fraud before August 5, 2006. Consequently, we disagree with appellee that the statute of limitations bars appellant's fraud claims as a matter of law.

C

FRAUDULENT MISREPRESENTATION AND CONCEALMENT

{¶ 38} To overcome a summary judgment motion in an action for fraudulent misrepresentation or concealment, a plaintiff must demonstrate that genuine issues of material fact remain as to each of the following elements: (1) a representation or, when a duty to disclose exists, concealment of a fact, (2) material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. E.g., Burr v. Stark Cty. Bd. of Commrs., (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.

{¶ 39} In the case sub judice, the parties dispute whether genuine issues of material fact remain regarding (1) whether appellee made a false representation or concealed a fact relating to the church/daycare foundation and the leases, and (2) whether appellant justifiably relied upon the representations or concealment. Neither party raises any argument relating to the other elements of a fraudulent misrepresentation claim. We therefore limit our review to determining whether genuine issues of material fact remain regarding the following elements: (1) representation or

concealment; (2) falsity; and (3) justifiable reliance.

1

Failure to Plead with Particularity

**{¶ 40}** First, we observe, as did the trial court, that appellant did not plead with particularity all of the fraud claims it addressed during the summary judgment proceedings. In its complaint, appellant raised two basic claims that appellee fraudulently misrepresented or concealed a fact material to the real estate transaction: (1) appellee concealed the physical condition of the church/daycare foundation, and (2) appellee fraudulently misrepresented the rental income generated from the tenants' leases and the duration of the leases. On appeal (and during the summary judgment proceedings) appellant further argues that appellee fraudulently misrepresented that the real estate had city water and that he fraudulently misrepresented or concealed other physical conditions of the real estate.

**{¶ 41}** Civ.R. 9(B) requires a fraud complaint to state "with particularity" "the circumstances constituting fraud." Dolan v. Glouster, 173 Ohio App.3d 617, 2007-Ohio-6275, 879 N.E.2d 838, (4th Dist. 2007), ¶28; Ihenacho v. Ohio Inst. of Photography & Technology, 2nd Dist. No. 24191, 2011-Ohio-3730, ¶30. Generally, "'the circumstances constituting fraud' include the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence." Aluminum Line Products Co.; Dolan at ¶28; L.E. Sommer Kidron, Inc. v. Kohler, 9th Dist. No. 06CA0044, 2007–Ohio–885, ¶27. "The 'particularity' requirement of Civ.R. 9(B) means that the pleading must contain allegations of fact which tend to show each and every element of a cause of action for fraud." Rieger v. Podeweltz, 2nd Dist. No. 23520, 2010–Ohio–2509, ¶9. "Failure to specifically plead the operative facts

constituting an alleged fraud presents a defective claim that may be dismissed." Id., citing

Universal Coach, Inc. v. New York Transit Authority, Inc., (1993), 90 Ohio App.3d 284, 629

N.E.2d 28.

{¶ 42} In the case at bar, appellant raises alleged instances of fraud related to the physical

condition of the real estate that it did not state with particularity in its complaint. Appellant claims

that genuine issues of material fact remain as to whether appellee fraudulently misrepresented the

condition of the foundation of the church/daycare building when he stated that the building was

"fairly new" and in "good condition." Appellant further argues that genuine issues of material fact

remain as to whether appellee failed to disclose, misrepresented, or concealed other physical

aspects of the property. The only circumstance related to the physical condition of the property

that appellant appears to have stated with particularity is that appellee "concealed a material fact by

failing to disclose * * * that the foundation of one of the buildings, then being used as a church and

day care, was faulty and defective." Appellant's complaint does not allege that appellee made a

misrepresentation by stating that the building was "fairly new" and "in good condition," nor

contain any other fraud allegations regarding the physical condition of the property. Thus,

because appellant did not plead any fraud claim other than appellee's alleged failure to disclose the

condition of the daycare/church foundation, the other fraud claims are defective on their face.

Goddard v. Stabile, 185 Ohio App.3d 485, 2009-Ohio-6375, 924 N.E.2d 868 (11th Dist.), ¶38

(refusing to consider fraud claim relating to porch of house when complaint failed to allege that

seller fraudulently misrepresented or concealed condition of porch but did allege other fraud claims

regarding the physical condition of the home). Consequently, the only fraud claims that appellant

arguably properly pled are that (1) appellee concealed a material fact by failing to disclose that the

church/daycare building foundation was faulty and defective; and (2) appellee falsely represented the amount of rental income generated and the duration of the tenants' leases.

2

Church/Daycare Foundation

{¶ 43}  In an ordinary real estate transaction, a seller has no duty to disclose patent defects, but does have "a duty to disclose material facts which are latent [and] not readily observable or discoverable through a purchaser's reasonable inspection."  Layman v. Binns, 35 Ohio St.3d 176, 178, 519 N.E.2d 642 (1988).   When, however, a real estate sales contract includes an "as is" clause, the seller is relieved "of any duty to disclose that the property was in a defective condition."  Kaye v. Buehrle, 8 Ohio App.3d 381, 457 N.E.2d 373, (9th Dist. 1983), paragraph one of the syllabus.   An "as is" clause bars an action for "'passive nondisclosure,' but does not shield the seller from an 'active' fraud or commission (as opposed to a fraud of omission), i.e., a misrepresentation or fraudulent concealment."  Rogers v. Hill, 124 Ohio App.3d 468, 471, 706 N.E.2d 438 (4th Dist. 1998).   An "as is" clause does not protect a seller who positively misrepresents or conceals the complained of condition.  Eiland v. Coldwell Banker Hunter Realty, 122 Ohio App.3d 446, 457, 702 N.E.2d 116 (8th Dist. 1997).   Thus, while a seller may not have a duty to disclose a defective condition, the seller may not take affirmative steps to misrepresent or to conceal the condition.

{¶ 44}  In the case sub judice, appellant accepted the property "as is."   Thus, it may recover from appellee only for fraudulent misrepresentation or concealment.

{¶ 45}  Appellant alleges that appellee fraudulently misrepresented the condition of the daycare building's foundation.   As we stated above, however, appellant did not plead with

particularity any fraudulent misrepresentation regarding the foundation. Instead, appellant alleged that appellee failed to disclose the condition of the foundation. Thus, this fraud claim fails as a matter of law.

{¶ 46} Moreover, even if appellant had properly pled the fraudulent misrepresentation claim regarding the foundation, we do not believe that any genuine issues of material fact remain as to whether appellee made a false statement regarding the foundation. The deposition reveals that appellee did not make a specific representation relating to the foundation. Appellant, however, asserts that appellee's statement that the building was "fairly new" and "in good condition" constituted a representation regarding the condition of the daycare building. Appellant apparently suggests that appellee's representation implies that the foundation is "in good condition." While we question whether appellee's statement could be construed as a representation regarding the foundation, we need not resolve this issue. Instead, we believe that no genuine issues of material fact remain as to whether appellee's representation that the building was "fairly new" and "in good condition" was false.

{¶ 47} Appellee's statement that the building was "fairly new" cannot reasonably be construed as false. The evidence demonstrates that it had been built in 2003–approximately three years before appellant agreed to purchase it.

{¶ 48} Appellee's statement that the building was "in good shape" also cannot be construed as a false fact. Appellee stated that the building was "out of square." This knowledge, however, fails to show that the building was not "in good shape." In fact, appellee related that even though the building was "crooked," it still functioned without any issues, other than the kitchen cabinets not being level. Appellant did not present any evidence that the building did not

function as intended during appellee's ownership or that the tenants had complained about a defect with the foundation.   The only issue demonstrated is that appellee had problems leveling cabinets in the kitchen.   This problem does not necessarily lead to a conclusion that the foundation was defective or not "in good shape."   Furthermore, appellee did not assert that the building was in "excellent" or "perfect" shape.

{¶ 49}  Appellant nevertheless argues that even if appellee did not affirmatively misrepresent the foundation's condition, he had a duty to disclose this alleged physical defect. Appellant argues that appellee had a duty to disclose this condition in order to place appellant "on equal footing."

{¶ 50}  Some courts have held that "[n]ondisclosure will become the equivalent of fraudulent concealment when it becomes the duty of a person to speak in order that the party with whom he is dealing may be placed on an equal footing with him."   Mancini v. Gorick, 41 Ohio App.3d 373, 374, 536 N.E.2d 8 (9th Dist. 1987).   Accord Leal v. Holtvogt, 123 Ohio App.3d 51, 75-76, 702 N.E.2d 1246, 1262 (2nd Dist. 1998).   In business transactions, however, when "parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other."   Blon v. Bank One, Akron, N.A., 35 Ohio St.3d 98, 101, 519 N.E.2d 363, 367 (1988), citing Pomeroy, Equity Jurisprudence, Section 904 (5 Ed. Symons Ed.1941) 558; Goldfarb, Fraud and Nondisclosure in the Vendor-Purchaser Relationship, 8 West.Res.L.Rev. 5, 25 (1956), and Umbaugh Pole Bldg. Co. v. Scott, 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320 (1979).

{¶ 51}  In certain circumstances, however, a duty to speak exists.   Id., citing Miles v.

McSwegin, 58 Ohio St.2d 97, 100, 12 O.O.3d 108, 110, 388 N.E.2d 1367 (1979).

> "For example, a party to a business transaction in a fiduciary relationship with
> another is bound to make a full disclosure of material facts known to him but not to
> the other. Such a duty may also arise out of an informal relationship where both
> parties to a transaction understand that a special trust or confidence has been
> reposed. Full disclosure may also be required of a party to a business transaction
> 'where such disclosure is necessary to dispel misleading impressions that are or
> might have been created by partial revelation of the facts.'"

Id., quoting Connelly v. Balkwill, 174 F.Supp. 49, 58 (N.D.Ohio 1959) (citations omitted).

{¶ 52} In the present case, the parties engaged in a commercial real estate transaction at arm's length. No circumstances exists to suggest that appellee had a duty to speak. Haessly admitted that he had an opportunity to inspect the premises and, even though it may not have been as thorough as he now wishes it were, Haessly admitted that appellee did not prohibit him from inspecting the premises. Appellant is a business entity formed as a real estate holding company. Haessly is part owner of a hardwood lumber business. Appellee is a businessman who operates a tractor sales company and a rental company. The parties did not share a fiduciary relationship. Moreover, there is no evidence that appellant reposed a special trust or confidence in appellee. In fact, appellant's parents advised him not to engage in a transaction with appellee due to appellee's "reputation," which Haessly described as "not real good." Even if appellant had reposed a special trust or confidence in appellee, the evidence does not show that appellee understood this to be the case. Additionally, the evidence does not show that appellee made a partial revelation regarding the foundation that gave appellant a misleading impression. Thus, we do not agree with appellant that appellee's nondisclosure amounted to fraudulent concealment.

{¶ 53} Consequently, we disagree with appellant that the trial court improperly entered summary judgment in appellee's favor regarding appellant's fraudulent misrepresentation or

concealment claim concerning the condition of the foundation.

### 3

### Lease Agreements

{¶ 54} Appellant also asserts that genuine issues of material fact remain as to whether appellee fraudulently misrepresented the duration of the leases the amount of rental income that each lease generated. Appellant claims that its reliance upon appellee's representation was justifiable, despite its failure to review the leases before purchasing the property. Appellant points out that even if it had reviewed the leases to determine the contractual lease amounts, those amounts differed from the rental income actually generated because appellee had entered into various verbal agreements that altered those amounts.

{¶ 55} Appellant also argues that appellee made various misrepresentations regarding the terms of the leases. Appellant contends that appellee represented that the church intended to renew its lease for another five years, but the church had actually informed appellee, before appellant signed the purchase agreement, that it did not intend to renew its lease. Appellant further observes that another tenant, Grandma's Catering, informed appellee that it would not renew its lease and that appellee failed to disclose this fact to appellant before closing. Appellant argues that appellee had a duty to update any information he had received regarding the status of the current tenants' leases before closing on the property and that his failure to do so amounts to fraudulent concealment.

{¶ 56} Appellee counters that he did not make any false statement regarding the church's intention to renew its lease. Appellee asserts that even if he made any statement regarding the church's lease renewal, he did not know for a fact at the time whether the church would be

renewing its lease. Thus, any statement he may have made could not have been false. Appellee offers no arguments concerning his statements regarding Grandma's Catering's intent not to renew its lease. Appellee also argues that appellant failed to establish that he made any representation regarding the lease amounts and that appellant has not produced the alleged "sheet" that appellee provided with the rental income. He additionally asserts that appellant cannot demonstrate that it justifiably relied upon any such statements when it did not look at the written leases before signing the purchase agreement or before closing.

{¶ 57} Initially, we disagree with appellee that appellant's failure to produce the "sheet" with the listed rental incomes is fatal to its fraud claim regarding the lease amounts. The parol evidence rule does not prohibit a party from introducing evidence extrinsic to a contract for the purpose of proving fraud. Galmish v. Cicchini, 90 Ohio St.3d 22, 28, 734 N.E.2d 782 (2000); Harrel v. Solt, 4th Dist. No. 00CA27 (Dec. 27, 2000).

> "It was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery."

Galmish, 90 Ohio St.3d at 28, quoting 37 American Jurisprudence 2d (1968) 621-622, Fraud and Deceit, Section 451 (footnotes omitted).

{¶ 58} In the case sub judice, even if appellant cannot produce the "sheet," appellant has offered oral testimony regarding appellee's representations concerning the lease amounts and stated that they differed from the rent appellant actually received upon taking possession. Appellee cites no authority to prohibit appellant from introducing such testimony to prove fraud. Thus, we disagree with appellee that appellant's failure to produce written evidence of the alleged

representations is fatal to its claim.

**{¶ 59}** We further disagree with appellee's assertion that appellant cannot establish that any representation he made regarding the church's intention to renew its lease was false. Haessly stated that appellee advised him before signing the purchase agreement that the church would renew its lease for another five years. However, the church pastor's affidavit stated that he advised appellee, before appellant signed the purchase agreement, that the church would not be renewing its lease. Appellee's statement conflicts with the pastor's statement. Consequently, a trier of fact must resolve this conflict in evidence to determine whether appellee's statement was false.

**{¶ 60}** Appellee next argues that appellant's fraudulent misrepresentation claim fails because appellant cannot establish that it justifiably relied upon appellee's statements regarding rental income and the duration of the leases.

**{¶ 61}** "The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties." Crown Property Dev., Inc. v. Omega Oil Co., 113 Ohio App.3d 647, 657, 681 N.E.2d 1343 (1996); Harrel at fn.8. "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." Amerifirst Savings Bank of Xenia v. Krug, 136 Ohio App.3d 468, 495, 737 N.E.2d 68 (2nd Dist. 1999), citing Lepera v. Fuson, 83 Ohio App.3d 17, 26, 613 N.E.2d 1060 (1992). The rule that reliance be justified is based upon policy and purpose:

> "'The rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own interests. There would seem to be no doubt that while in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary."

Id. at 495-496, quoting 50 Ohio Jurisprudence 3d (1984), Fraud and Deceit, Section 132 (citations omitted).

{¶ 62} In determining whether reliance was justified, the factfinder may "'consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge.'" Feliciano v. Moore, 64 Ohio App.2d 236, 241, 412 N.E.2d 427 (1979), quoting 37 American Jurisprudence 2d [1968] 330, 332, Fraud and Deceit, Section 248.

{¶ 63} "'Where the means of obtaining the information in question were not equal, the representations of the person believed to possess superior information may be relied upon.'" Andrew v. Power Marketing Direct, Inc., 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶62, quoting Fort Washington Resources, Inc. v. Tannen, 858 F.Supp. 455, 460 (E.D.Pa.1994). Conversely, "[a]n individual has no right to rely on a representation when the actual facts are equally open to both parties." Takis L.L.C. v. C.D. Morelock Props., Inc., 180 Ohio App.3d 243, 905 N.E.2d 204, 2008–Ohio–6676, at ¶30 (10th Dist.).

{¶ 64} In the case sub judice, we are unable to state, as a matter of law, that appellant's reliance upon appellee's representations regarding the rental income and duration of the leases was not justifiable. Appellant's reliance does not appear unreasonable on its face, and the facts do not suggest that appellant should have doubted appellee's representations regarding the lease amounts and renewals. Appellee informed appellant of either the rent potential or the actual rent, depending upon whose testimony is believed. If appellee informed appellant of the actual rent,

then, under the circumstances, appellant's reliance was not unjustified as a matter of law. Both parties appear to have engaged in a rather sophisticated real estate transaction with little or no legal or professional assistance. Both parties appear to possess some business acumen. Appellee physically possessed the written leases until three days after closing. While he apparently did not prohibit appellant from reviewing the leases, he also did not volunteer them. Moreover, appellee specifically requested that appellant not speak with the tenants. Consequently, we cannot state as a matter of law that appellant possessed an equal opportunity to obtain the lease information and appellant's reliance upon appellee's representations was not patently unreasonable.

{¶ 65} To the extent appellee asserts that his request that appellant not speak with the tenants should have alerted appellant to the possibility that appellee was not telling the truth and, thus, appellant should not rely upon appellee's representations, we observe that "any number of sounds business reasons" may exist to "keep negotiations confidential until the deal is finalized." Millersport Hardware, Ltd. v. Weaver Hardware Co., 5th Dist. No. 08-CA-86, 2009-Ohio-6556, ¶31. Appellant apparently took appellee's request to keep the transaction confidential at face value and not as an indication that appellee was attempting to defraud him.

{¶ 66} Additionally, even if appellant had attempted to verify the actual rent by reviewing the leases, appellee does not dispute that the leases did not reveal the true rent each tenant paid. Appellee admitted that he had various verbal agreements that altered the contractual amounts. Thus, whether appellant's reliance upon appellee's statements regarding the rental income was justifiable is a question of fact.

{¶ 67} Moreover, we believe that whether appellant's reliance upon appellee's statements regarding the duration of the leases was justifiable also presents a question of fact. According to appellant, appellee informed it that at least two tenants would renew their leases when appellee allegedly had been informed otherwise. Appellee again asserts that appellant's reliance was unjustified because, if appellant had looked at the leases, it would have discovered when the leases expired. Appellee, however, allegedly specifically informed appellant that when the leases expired, the church and Grandma's Catering would renew their leases. In light of these circumstances, appellant's reliance does not appear unreasonable and a trier of fact should determine whether appellant's reliance was justified. Consequently, we agree with appellant that the trial court should not have entered summary judgment in appellee's favor regarding the fraudulent misrepresentation claims relating to the lease amounts and renewals.

{¶ 68} Accordingly, based upon the foregoing reasons, we overrule in part, and sustain in part, appellant's assignment of error. We affirm the trial court's summary judgment in appellee's favor regarding the fraud claims relating to the physical condition of the property. We, however, reverse and remand the trial court's summary judgment in appellee's favor regarding the fraud claims relating to the lease amounts and renewals.

`

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART, AND
REMANDED FOR FURTHER
PROCEEDINGS CONSISTENT
WITH THIS OPINION.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.   Appellant and appellee shall equally divide the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J.: Concurs in Judgment & Opinion
McFarland, P.J.: Concurs in Part (physical condition fraud claims)& Dissents in Part (lease fraud claims)

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.