**DOLAN et al., Appellants,**

v.

**CITY OF GLOUSTER et al., Appellees.**

[Cite as *Dolan v. Glouster*, 173 Ohio App.3d 617, 2007-Ohio-6275.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 06CA16.

Decided Nov. 15, 2007.

618

Robert C. Paxton II, for appellants.

Mark Landes and Mark H. Troutman, for appellees Doug Bentley and the Athens County Commissioners.

KLINE, Judge.

{¶ 1} David Dolan Jr. and his wife, Jennifer Dolan, d.b.a. JD's Towing (collectively, "JD's Towing"), appeal the Athens County Common Pleas Court's judgment on the pleadings, pursuant to Civ.R. 12(C), in favor of the Athens County Commissioners and Athens County 911 Coordinator, Douglas Bentley. JD's Towing contends that the trial court erred in dismissing its claims for promissory estoppel, tortious interference with a business relationship, and fraud. Because after construing all material allegations in the complaint in favor of JD's Towing, together with all reasonable inferences to be drawn therefrom, we find, beyond doubt, that JD's Towing can prove no set of facts in support of their claims for promissory estoppel, tortious interference with a business relationship, and fraud that would entitle it to relief against the commissioners, we disagree. Further, we find, beyond doubt, that JD's Towing can prove no set of facts in support of its fraud claim against Bentley, in his official and individual capacity, or its claim that Bentley, in his official capacity, tortiously interfered with JD's Towing's business relationship with the commissioners. However, because we find that Bentley, in his official capacity, could interfere with the alleged business relationship that JD's Towing had with the city of Glouster, and because we find that Bentley, in his individual capacity, could interfere with JD's Towing's alleged business relationships with both the city of Glouster and the commissioners, we agree. Accordingly, we affirm in part and reverse in part the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

I

{¶ 2} JD's Towing filed a complaint against the city of Glouster (located in Athens County), Glouster Mayor Robert Funk, former Glouster Mayor David Angle, the Glouster City Council, and Glouster Police Chief Robert Taylor (collectively, "the Glouster defendants") and against the commissioners and Bentley. In the complaint, JD's Towing alleges that it moved its business from Morgan County to Glouster based on representations by the then mayor of Glouster, David Angle, that JD's Towing would receive all of the towing business in Glouster if it relocated. JD's Towing claims that Bentley also represented that it would become a member of the Athens County 911 towing rotation list if it could meet certain requirements. In order to meet these requirements, JD's Towing purchased a second tow truck, hired a second employee, maintained certain insurance, and made its service available 24 hours a day.

{¶ 3} Through January 2003, JD's Towing received approximately $25,000 worth of business per year from Glouster, and additionally received regular calls from Athens County 911. That all changed in January 2003, when JD's Towing charged Roland Chalfant its regular rate of $70 for the towing and storage of his vehicle. Mayor Angle, a friend of Chalfant's, allegedly requested that JD's Towing lower the bill. When JD's Towing refused, Angle allegedly threatened that JD's Towing would never receive another towing job from Glouster.

{¶ 4} Since the incident, it has not received any business from Glouster. Additionally, it did not receive business through Athens County 911 in 2003 or 2004, and it began to receive business from Athens County 911 in 2005 only after it filed its complaint. As a result, JD's Towing claims that its income has dropped significantly.

{¶ 5} After JD's Towing filed an amended complaint, the commissioners and Bentley filed an answer and moved for judgment on the pleadings. The court granted their motion. The court found that JD's Towing could prove no set of facts as pleaded in support of its claims that would entitle it to relief against the commissioners and Bentley. The court explicitly noted that the Glouster defendants did not have a motion to dismiss pending before the court. It also certified that its order was a final, appealable order and that there was no just reason for delay.

{¶ 6} JD's Towing appeals the trial court's judgment, asserting the following assignments of error: I. "The trial court committed error in granting appellees' motion for judgment on the pleadings on the issue of promissory estoppel as sufficient facts were alleged by appellants to overcome this motion." II. "The trial court committed prejudicial error when it found, as a matter of law, that appellants failed to properly plead a claim of tortuous [sic] interference with a

business relationship." III. "The trial court erred as a matter of law in finding that appellants failed to properly plead a cause of action against a governmental agent or agency which alleges fraud or bad faith."

## II

### Standard of Review

{¶ 7} A motion for judgment on the pleadings pursuant to Civ.R. 12(C) is, essentially, a belated Civ.R.12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *State ex rel. Holloman v. Phillips,* 100 Ohio St.3d 70, 2003–Ohio–5063, 796 N.E.2d 524, ¶ 8, fn. 3; *Nelson v. Pleasant* (1991), 73 Ohio App.3d 479, 482, 597 N.E.2d 1137. Judgment on the pleadings is appropriate if, in construing all material allegations in the complaint in favor of the nonmoving party, together with all reasonable inferences to be drawn therefrom, the court finds, beyond doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005–Ohio–5409, 835 N.E.2d 701, at ¶ 2; *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931, *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165–166, 63 O.O.2d 262, 297 N.E.2d 113. We review the judgment on the pleadings de novo, giving no deference to the trial court's judgment. *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801, 807, 742 N.E.2d 674.

{¶ 8} Here, we are required to accept as true all the material allegations of JD's Towing's amended complaint with all the inferences drawn therefrom construed in its favor. Because JD's Towing attached the original complaint to the amended complaint and incorporated it therein, we are required to examine it as well because it is considered part of the complaint. *Castle Hill Holdings L.L.C. v. Al Hut, Inc.,* Cuyahoga App. No. 86442, 2006–Ohio–1353, 2006 WL 726911, ¶ 101, citing Civ.R. 10(C); *Denlinger v. Columbus* (Dec. 7, 2000), Franklin App. No. 00AP–315, 2000 WL 1803923.

## III

### Liability of Commissioners

#### A

{¶ 9} In its first assignment of error, JD's Towing asserts that the trial court erred when it granted the commissioners' motion for judgment on the pleadings on the issue of promissory estoppel. JD's Towing contends that it alleged sufficient facts in its amended complaint to overcome the motion. We disagree.

{¶ 10} Ohio recognizes the doctrine of promissory estoppel. *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 439–440, 662 N.E.2d 1074. The Ohio Supreme Court adopted the doctrine of promissory estoppel from Restatement of the Law 2d, Contracts (1981), Section 90, which provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003–Ohio–1913, 786 N.E.2d 883, at ¶ 32–33, citing *Ed Schory & Sons*, supra. To prevail on a claim of promissory estoppel, "[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Shampton* at ¶ 34, citing *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630.

{¶ 11} Here, however, JD's Towing asserts the doctrine of promissory estoppel against a political subdivision. The general rule, as set forth in R.C. 2744.02(A)(1), is that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The doctrine of promissory estoppel is "inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006–Ohio–4251, 852 N.E.2d 716, ¶ 16, 25.

{¶ 12} The term "governmental function" is defined to include, among other things, functions that are "for the common good of all citizens of the state." R.C. 2744.01(C)(1)(b). R.C. 2744.01(C)(2) sets forth a nonexclusive list of specific functions that are considered "government functions," which include "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds." R.C. 2744.01(C)(2)(e). Further, towing services performed by a political subdivision are governmental functions. See *Suru v. Cleveland* (Feb. 25, 1999), Cuyahoga App. No. 73639, 1999 WL 126141 (holding that "[t]he police service of towing suspected stolen vehicles is a government, not a proprietary, function").

{¶ 13} Here, the Athens County 911 emergency service maintained a towing-rotation list. The purpose of the list was to use the named towing companies to tow vehicles. We believe that the act of maintaining the list is part of the process of towing. Thus, we find that the act of maintaining the towing list is a government function. *Suru*, supra. JD's Towing has not disputed such a

contention at any time in this case. Therefore, after construing all material allegations in the complaint in favor of JD's Towing, together with all reasonable inferences to be drawn therefrom, we find, beyond doubt, that JD's Towing can prove no set of facts in support of its claim that would entitle it to relief on the issue of promissory estoppel. Consequently, the trial court did not err when it granted the commissioners' motion on this issue because the commissioners are immune from liability under a theory of promissory estoppel.

{¶ 14} Accordingly, we overrule JD's Towing's first assignment of error.

## B

{¶ 15} In their second and third assignments of error, JD's Towing alleges that the trial court committed prejudicial error when it found, as a matter of law, that it failed to properly plead claims of (1) tortious interference with a business relationship and (2) fraud. The trial court granted judgment on the pleadings because, as a party to the alleged business relationship, the commissioners "would not be subject to this cause of action under the facts alleged herein." The trial court also held that the commissioners could not be liable for tortious interference because it was immune from such liability pursuant to Chapter 2744 of the Revised Code. While not abundantly clear from its brief, JD's Towing apparently asserts that it had two separate business relationships: (1) one between it and Glouster and (2) a separate relationship with Athens County 911. It also asserts that the commissioners are not immune for reckless or wanton behavior.

{¶ 16} Before addressing the merits of the individual causes of action against the commissioners, we will first address whether the commissioners are immune from claims of tortious interference and fraud. "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Cater v. Cleveland* (1998) 83 Ohio St.3d 24, 28, 697 N.E.2d 610; see also *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007–Ohio–2070, 865 N.E.2d 845, ¶ 10. The first tier involves determining whether the political subdivision is generally immune from liability under R.C. 2744.02(A)(1). Id.; see also *Hortman*, 110 Ohio St.3d 194, 2006–Ohio–4251, 852 N.E.2d 716, at ¶ 12.

{¶ 17} Once immunity is generally established, "the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply." *Hortman* at ¶ 12. Only when one of the exceptions listed in R.C. 2744.02(B) applies do courts move to the third tier. *Terry v. Ottawa Cty. Bd. of Mental Retardation & Dev. Disabilities*, 151 Ohio App.3d 234, 2002–Ohio–7299, 783 N.E.2d 959, ¶ 13; see also Gotherman & Babbit, Ohio Municipal Law (Baldwin 2d

Ed.1992), Txt 32.4 (stating that "[t]he defenses and immunities provided to a political subdivision by R.C. 2744.03(A) only become relevant if one of the five exceptions to immunity in R.C. 2744.02(B) applies to render the subdivision vulnerable to liability"). If an exception to the general immunity provision does apply, "under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies." *Hortman,* 110 Ohio St.3d 194, 2006–Ohio–4251, 852 N.E.2d 716, at ¶ 12.

 {¶ 18} Here, the general grant of immunity under R.C. 2744.02(A)(1) does apply, as set forth in the analysis under JD's Towing's first assignment of error. Hence, the analysis turns to the second tier, which focuses on the exceptions to the general immunity set forth in R.C. 2744.02(B) that "generally involve: 1) negligent operation of vehicles by city employees; 2) negligence of employees in connection with proprietary functions; 3) failure to keep public roads in repair; 4) employee negligence that occurs within or on the grounds of buildings used in connection with the performance of a governmental function; and 5) situations where liability is expressly imposed by statute." *Stillwell v. Xenia* (Feb. 16, 2001), Greene App. No. 2000–CA–41, 2001 WL 127880.

{¶ 19} We find that none of the exceptions listed in R.C. 2744.02(B) apply. Therefore, we do not need to consider the third tier.

{¶ 20} In fact, Ohio courts specifically hold that "a political subdivision is immune from a claim of intentional interference with business interests." *Charles Gruenspan Co., L.P.A. v. Thompson,* Cuyahoga App. No. 80748, 2003–Ohio–3641, 2003 WL 21545134, ¶ 48, citing *Allied Erecting Dismantling Co., Inc. v. Youngstown,* 151 Ohio App.3d 16, 2002–Ohio–5179, 783 N.E.2d 523; see also *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 576 N.E.2d 807; *Denune v. Springfield,* Clark App. No. 01CA0097, 2002–Ohio–3287, 2002 WL 1393687, ¶ 33. Further, the Ohio Supreme Court has held that political subdivisions are immune from claims of fraud. *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105; see also *Featherstone v. Columbus,* Franklin App. No. 06AP–89, 2006–Ohio–3150, 2006 WL 1704110, ¶ 11 (holding that "immunity bars appellant's cause of action even though he alleges intentional conduct"); *Charles Gruenspan,* supra (stating that governmental immunity "applies particularly to intentional tort claims of fraud and intentional infliction of emotional distress").

{¶ 21} JD's Towing asserts that it can hold the commissioners liable for intentional interference with a business relationship and fraud. It cites *Burr v. Stark Cty. Bd. of Cty. Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, in support. However, *Burr* is inapplicable to this matter "because it is a pre-R.C.2744.01 et. seq. case." *Eischen v. Stark Cty. Bd. of Commrs.,* Stark App.

No.2002CA00090, 2002–Ohio–7005, 2002 WL 31831395, ¶ 17; see also *Stillwell,* Greene App. No. 2000–CA–41 (holding that *Burr* predates the enactment of the Political Subdivision Tort Liability Act, wherein "[s]ignificant changes were made in the area of sovereign immunity"). The analysis applicable to this matter is not that of *Burr,* but instead the analysis of *Cater* and *Wilson.* See *Stillwell.*

{¶ 22} JD's Towing also asserts that several sections under R.C. 2744.03 act to impose liability upon Athens County. However, "R.C. 2744.03 establishes immunities and defenses for political subdivisions and their employees in the event that one of the exceptions in R.C. 2744.02 does apply." *Terry,* 151 Ohio App.3d 234, 2002–Ohio–7299, 783 N.E.2d 959, at ¶ 13. Because "none of the exceptions in R.C. 2744.02 * * * apply * * *, R.C. 2744.03 has no relevance to the disposition of this cause and cannot be used by [JD's Towing] to support [its] claim." Id.

{¶ 23} Here, the commissioners represent Athens County, which is a political subdivision subject to the general immunity provided for in R.C. 2744.02(A)(1) for the government function at issue. No exception under R.C. 2744.02(B) applies to exclude the commissioners from the general grant of immunity for claims of intentional tortious interference with a business relationship or fraud. Therefore, in construing all material allegations in the complaint in favor of JD's Towing, together with all reasonable inferences to be drawn therefrom, we find, beyond doubt, that JD's Towing can prove no set of facts in support of its claims that would entitle it to relief. Consequently, the trial court did not err when it granted the commissioners' motion on these claims.

{¶ 24} Accordingly, we overrule JD's Towing's second and third assignments of error as they relate to the commissioners.

## IV

### Liability of Leonard Bentley

{¶ 25} In their second and third assignments of error, JD's Towing also alleges that Bentley, officially and individually, is liable for tortious interference with a business relationship and fraud. Ohio courts have held that "[t]he analysis discussed in *Cater,* supra, does not apply to the immunity of an employee." *Wooton v. Vogele* (2001), 147 Ohio App.3d 216, 769 N.E.2d 889, at ¶ 15. See also *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 658 N.E.2d 814, fn. 6, citing *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31; *Harger Trust v. Morrow Cty. Regional Planning Comm.,* Morrow App. No. 03–CA–19, 2004–Ohio–6643, 2004 WL 2847797. Instead, "[t]he liability of political subdivision employees is governed by R.C. 2744.03," and "R.C. 2744.03(A)(6) contains the proper standard for determining the immunity of * * * an 'employee.' " Id. at ¶ 15, 17.

{¶ 26} R.C. 2744.03(A)(6) states: "In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless * * * [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities * * * [or] were with malicious purpose, in bad faith, or in a wanton or reckless manner * * * [or] [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." Thus Bentley, as an employee of a political subdivision, can be liable in his official capacity if his alleged actions fell outside the scope of his employment or were malicious, in bad faith, wanton, or reckless.

### A

{¶ 27} We first address JD's Towing's claim of fraud in their third assignment of error. To prevail on a claim of fraud, one must prove the following elements: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, citing *Burr,* 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101; *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407.

{¶ 28} Pursuant to Civ.R. 9(B), "[i]n all averments of fraud * * * the circumstances constituting fraud * * * shall be stated with particularity." Generally, the circumstances "include the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence." *L.E. Sommer Kidron, Inc. v. Kohler,* Wayne App. No. 06CA0044, 2007–Ohio–885, 2007 WL 634428, ¶ 27, citing *F & J Roofing Co. v. McGinley & Sons, Inc.* (1987), 35 Ohio App.3d 16, 17, 518 N.E.2d 1218.

{¶ 29} The rules require particularity when alleging fraud in order "to protect defendants from the potential harm to their reputations which may attend general accusations of acts involving moral turpitude," to ensure "that the obligations are concrete and specific so as to provide defendants notice of what conduct is being challenged," and to inhibit "the filing of complaints as a pretext for discovery of unknown wrongs." *Reinglass v. Morgan Stanley Dean Witter, Inc.,* Cuyahoga App. No. 86407, 2006–Ohio–1542, 2006 WL 802751, ¶ 20, citing *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 4, 531 N.E.2d 318.

{¶ 30} Here, JD's Towing never set forth in its complaint the specific representation made by Bentley or even set forth the substance of any such representation, let alone when or where Bentley made the representation. Thus, the allegations contained in its complaint fail to provide Bentley with notice of the representation that JD's Towing is challenging. Therefore, the complaint, insofar as JD's Towing claims to have alleged fraud, is defective pursuant to Civ.R. 9.

{¶ 31} Consequently, in construing all material allegations in the complaint in favor of JD's Towing, together with all reasonable inferences to be drawn therefrom, we find, beyond doubt, that JD's Towing can prove no set of facts in support of its fraud claim against Bentley that would entitle it to relief. Consequently, the trial court did not err when it granted Bentley's motion on this claim.

{¶ 32} Accordingly, we overrule JD's Towing's third assignment of error as it relates to Bentley in his official and individual capacities.

B

{¶ 33} JD's Towing asserts in its second assignment of error that Bentley, officially and individually, tortiously interfered with the business relationships that JD's Towing had with Athens County 911 and the city of Glouster. "The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Cooper v. Jones,* Jackson App. No. 05CA7, 2006–Ohio–1770, 2006 WL 895210, ¶ 18, citing *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.* 148 Ohio App.3d 596, 2002–Ohio–3932, 774 N.E.2d 775. It "includes intentional interference with prospective contractual relations not yet reduced to a contract." Id. "[T]he interference must be intentional, not negligent." Id.

{¶ 34} Further, "[i]n such cases the law has generally required proof that the defendant has acted maliciously." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, citing *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 16, 552 N.E.2d 207. Because malice is a necessary element of the claim and an exception to an employee's immunity under R.C. 2744.03(A)(6), Bentley, as an employee of a political subdivision, is not immune from a tortious interference claim by virtue of R.C. Chapter 2744.

{¶ 35} However, Bentley cannot be subject to such a claim if he was a party to the business relationship allegedly interfered with. A person cannot tortiously interfere with his own business relationship. See *Castle Hill Holdings,* 2006–Ohio–1353, 2006 WL 726911, at ¶ 47. Thus, Bentley, in his official capacity

as the chief of operations of Athens County 911 emergency communications, could not interfere with any business relationship Athens County 911 had with JD's Towing because, in his official capacity, he was a party thereto. However, Bentley, in his capacity as a private individual, is not a party to that relationship and could interfere with JD's Towing's relationship with Athens County 911. See id. (holding that an "alleged wrongdoer is considered a third party [to the business relationship] * * * where he or she has acted not in the capacity as a corporate officer but has acted solely in his or her personal capacity").

{¶ 36} Further, Bentley could interfere in his official and individual capacities with the business relationship that Glouster had with JD's Towing, because he was not a party to that relationship. JD's Towing's complaint can be construed to allege two separate business relationships: (1) between JD's Towing and Athens County 911 and (2) between JD's Towing and Glouster. This court is not finding conclusively that those two relationships are, in fact, separate, or that they exist at all. Those business relationships are alleged in the complaint, and we must construe the allegations in favor of JD's Towing.

{¶ 37} Therefore, in construing all material allegations in the complaint in favor of JD's Towing, together with all reasonable inferences to be drawn therefrom, we find, beyond doubt, that JD's Towing can prove no set of facts in support of its "tortious interference with a business relationship" claim involving JD's Towing and Athens County 911 that would entitle it to relief against Bentley in his official capacity. However, the complaint adequately sets forth claims that (1) Bentley, in his official capacity, interfered with JD's Towing's alleged business relationship with Glouster and (2) Bentley, in his individual capacity, interfered with JD's Towing's alleged business relationships with both Athens County 911 and Glouster.

{¶ 38} Accordingly, we sustain in part and overrule in part JD's Towing's second assignment of error involving Bentley.

V

{¶ 39} In conclusion, we overrule JD's Towing's first and third assignments of error. We overrule JD's Towing's second assignment of error as it relates to the commissioners. With regard to Bentley, we overrule JD's Towing's second assignment of error as it relates to its claim that Bentley, in his official capacity, interfered with JD's Towing's alleged business relationship with Athens County 911. However, we sustain JD's Towing's second assignment of error as it relates to its claims that (1) Bentley, in his official capacity, interfered with JD's Towing's alleged business relationship with the city of Glouster and (2) Bentley,

in his individual capacity, interfered with JD's Towing's alleged business relationships with both Athens County 911 and Glouster.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HARSHA, J., concurs.

ABELE, J., concurs in judgment only.