[Cite as *Nihiser v. Hocking Cty. Bd. of Commrs.*, 2013-Ohio-3849.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

MICHAEL D. NIHISER, et al.,   :
  :
    Plaintiffs-Appellants,   :   Case No. 12CA18
  :
  vs.   :
  :
HOCKING COUNTY BOARD OF   :   <u>DECISION AND JUDGMENT</u>
COMMISSIONERS, et al.   :   <u>ENTRY</u>
  :
    Defendants-Appellees.   :   **Released: 08/30/13**
_____
<u>APPEARANCES:</u>

L. Jackson Henniger, Logan, Ohio, for Appellants.

Randall L. Lambert, Ironton, Ohio, for Appellees.
_____

McFarland, P.J.

{¶1} Michael Nihiser and Vicki Devol appeal the trial court's summary judgment decision determining the Hocking County Board of Commissioners and William Shaw, County Engineer, are entitled to sovereign immunity under R.C. Chapter 2744 with regard to the function of designating street numbers pursuant to R.C. 303.021. On appeal, Appellants contend that 1) the trial court erred as a matter of law when it granted Appellees' motion for summary judgment because a genuine issue of material fact existed; 2) the trial court erred as a matter of law when it

granted Appellees' motion for summary judgment because a genuine issue of material fact existed as to whether the delegation of the authority was proper; 3) the trial court erred as a matter of law when it granted Appellees' motion for summary judgment by holding that the Appellees were covered by governmental immunity; and 4) the trial court erred as a matter of law when it granted Appellees' motion for summary judgment because the Appellees are not entitled to judgment as a matter of law.

{¶2} In light of our determination that the function of designating street numbers is a governmental function for which immunity is granted, that the function was properly delegated to Shaw, that no genuine issues of material fact exist, and that Appellees were entitled to judgment as a matter of law, we overrule Appellants' assignments of error. Accordingly, we affirm the decision of the trial court granting summary judgment in favor of Appellees.

## FACTS

{¶3} Appellants, Michael Nihiser and Vicki Devol, are property owners in Hocking County. On December 30, 2010, Appellants filed a complaint naming Appellees Hocking County Board of Commissioners (hereinafter "Board") and William Shaw (hereinafter "Shaw"), Hocking County Engineer, as defendants. The complaint alleged that Board, which

possessed authority to designate street names and building numbers pursuant to R.C. 303.021, had improperly delegated the authority to perform that function to Shaw, as County Engineer. Appellant claimed that Shaw and the engineer's office, in turn, wrongfully failed to number or timely number certain lots owned by Appellants and also wrongfully withheld numbers based upon an additional requirement that a driveway be located upon the property first, a requirement which is not contained in R.C. 303.021. Appellants also alleged that Shaw bore a personal animus toward them as a result of Appellants' opposition to a licensing tax proposed by Shaw. None of the county commissioners or Shaw were named as defendants in their individual capacities.

{¶4} Appellants' complaint alleged damages in the amount of $250,000.00. A review of the record indicates Appellants believed that the value of their property was decreased as a result of having to cut trees down in order to place the driveway in a location that would be approved by Shaw. Appellants explained that they were selling log cabin lots where trees were valuable.

{¶5} Appellees filed an answer to the complaint on January 31, 2011, and subsequently filed a motion for summary judgment, on June 20, 2012. Appellants filed a memorandum contra on July 11, 2012. In a decision dated

July 27, 2012, the trial court granted Appellees' motion for summary judgment. In reaching its decision, the trial court found that the designation of street numbers was a governmental function for which Appellees were immune from liability under R.C. Chapter 2744, and that none of the exceptions to immunity contained in the statute were applicable. The trial court also found that Board had authority to delegate the performance of this function to Shaw and that the policy of requiring a driveway was a valid exercise of the engineer's statutory and delegated duty.

{¶6} It is from this decision that Appellants now bring their timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED PLAINTIFF'S [SIC] MOTION FOR SUMMARY JUDGMENT BECAUSE A GENUINE ISSUE OF MATERIAL FACT EXISTED.

II.     THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED PLAINTIFF'S [SIC] MOTION FOR SUMMARY JUDGMENT BECAUSE A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO WHETHER THE DELEGATION OF THE AUTHORITY WAS PROPER.

III.    THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED PLAINTIFF'S [SIC] MOTION FOR SUMMARY JUDGMENT BY HOLDING THAT THE DEFENDANTS WERE COVERED BY GOVERNMENTAL IMMUNITY.

IV.    THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED PLAINTIFF'S [SIC] MOTION FOR SUMMARY

JUDGMENT BECAUSE THE DEFENDANTS ARE NOT
ENTITLED TO JUDGMENT AS A MATTER OF LAW."

## LEGAL ANALYSIS

**{¶7}** Although Appellants raise four separate assignments of error, their brief contains only one legal argument. App.R. 12(A)(2) authorizes us to disregard any assignment of error that a party fails to argue separately. However, in the interests of justice, and because each assignment of error ultimately challenges the trial court's grant of summary judgment, we will address the arguments raised.

## SUMMARY JUDGMENT STANDARD

**{¶8}** Appellate courts review trial court summary judgment decisions de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. See *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); *Morehead v. Conley*, 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786 (1991). Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law. Civ.R. 56(C) provides: "Summary judgment shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶9} Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall*, 77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164 (1997).

{¶10} Appellants contend that the trial court erred in granting summary judgment to Appellees based upon the doctrine of sovereign immunity. Appellants argue that Board improperly delegated the authority to designate street numbers to Shaw, the County Engineer, and that Shaw impermissibly required a driveway be established prior to the issuance of a street number. Appellants further claim that genuine issues of material fact exist which should have precluded summary judgment.

R.C. 2744.02

{¶11} "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998); see also *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. The first tier involves determining whether the political subdivision is generally immune from liability under R.C. 2744.02(A)(1). *Elston* at ¶ 10; see also *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 12.

{¶12} Once immunity is generally established, "the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply." Id. at ¶ 12. Only when one of the exceptions listed in R.C.

2744.02(B) applies do courts move to the third tier. *Terry v. Ottawa Cty. Bd. of Mental Retardation & Dev. Disabilities*, 151 Ohio App.3d 234, 2002-Ohio-7299, 783 N.E.2d 959, ¶ 13; *Dolan v. Glouster*, 173 Ohio App.3d 617, 2007-Ohio-6275, 879 N.E.2d 838, ¶ 17. See also Gotherman & Babbit, Ohio Municipal Law (2d Ed.1992), Section 32.4 ("The defenses and immunities provided to a political subdivision by R.C. 2744.03(A) only become relevant if one of the five exceptions to immunity in R.C. 2744.02(B) applies to render the subdivision vulnerable to liability"). If an exception to the general immunity provision does apply, "under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies." *Hortman* at ¶ 12.

{¶13} Here, the general grant of immunity under R.C. 2744.02(A)(1) applies to the Board, as the county is a political subdivision. See R.C. 2744.01(F). Additionally, Shaw, the Hocking County Engineer, is an employee of Board pursuant to R.C. 2744.01(B), which provides that the definition of employee includes any elected or appointed official of a political subdivision.  Under R.C. 2744.02(A)(1), the general rule is as follows:

> "[A] political subdivision is not liable in damages in a civil
>
> action for injury, death, or loss to person or property allegedly

caused by any act or omission of the political subdivision or an

employee of the political subdivision in connection with a

governmental or proprietary function."

{¶14} In this case, the parties disagree over whether designating street

numbers is a governmental or a proprietary function.  R.C. 303.021 governs

the designation of street names and assignment of numbers to buildings, and

provides as follows:

"The board of county commissioners may designate street

names and assign numbers to buildings along the streets in

unincorporated areas.  The owners of such buildings shall

number or renumber such buildings in accordance with the

numbers assigned by the county commissioners."

Clearly, boards of county commissioners are given the authority to perform

this function.  We must determine, however, whether the function is

governmental or proprietary.

{¶15} R.C. 2744.01(G) defines proprietary functions and provides as

follows in section (1)(a)-(b):

"(G)(1) 'Proprietary function' means a function of a political

subdivision that is specified in division (G)(2) of this section *or*

that satisfies *both* of the following:

(a) The function is not one described in division (C)(1)(a) or (b)

of this section and is not one specified in division (C)(2) of this

section;

(b) The function is one that promotes or preserves the public

peace, health, safety, or welfare *and* that involves activities that

are customarily engaged in by nongovernmental persons."

(Emphasis added).

Designating street numbers is not one of the functions listed in R.C.

2744.01(G)(2)(a)-(e) and thus, is not expressly defined as a proprietary

function. Further, we conclude designating street numbers does not meet the

definition of proprietary function under R.C. 2744.01(G)(1)(a)-(b), which in

addition to requiring that the function promote or preserve public peace,

health, safety or welfare, also requires that the activities be customarily

engaged in by nongovernmental persons. It cannot be said that designating

street numbers is customarily engaged in by nongovernmental persons.

Thus, by process of elimination, we conclude that the function of

designating street numbers is not proprietary in nature.

{¶16} R.C. 2744.01(C) defines governmental functions and provides

as follows in section (C)(1)(a)-(b):

"(C)(1) 'Governmental function' means a function of a political

subdivision that is specified in division (C)(2) of this section *or*

that satisfies *any* of the following:

(a) A function that is imposed upon the state as an obligation of

sovereignty and that is performed by a political subdivision

voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the

state;

(c) A function that promotes or preserves the public peace,

health, safety, or welfare; that involves activities that are not

engaged in or not customarily engaged in by nongovernmental

persons; and that is not specified in division (G)(2) of this

section as a proprietary function."

As already discussed, designating street numbers is not specified in R.C.

2744.01(G)(2) as a proprietary function. Further, although both Appellees

and the trial court suggest that the function is governmental pursuant to R.C.

2744.01(C)(2)(e)[1] and (i)[2], we are not persuaded. In fact, the designation of

street addresses is not explicitly defined as either a proprietary or

---

[1] R.C. 2744.01(C)(2)(e) defines as governmental "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds[.]"
[2] R.C. 2744.01(C)(2)(i) defines as governmental "[t]he enforcement or nonperformance of any law[.]"

governmental function. Further, this Court has been unable to locate any guidance whatsoever, related to the issue of whether the function of designating street numbers is governmental or proprietary in nature. Nonetheless, we conclude that the function can be classified as governmental under R.C. 2744.01(C)(1)(a)-(b).

{¶17} First, we find the function of designating street numbers and the development of an orderly system and process to do so serves the common good of all citizens of the state in accordance with R.C. 2744.01(C)(1)(b). Second, not only does the performance of this function promote the public safety and welfare, the activities related to this function are not customarily engaged in by nongovernmental persons in accordance with R.C. 2744.01(C)(1)(c) For instance, in *Lyons v. Teamhealth Midwest Cleveland*, et al., 8th Dist. No. 96336, 2011-Ohio-5501, confusion over the location of a residential address on the part of the dispatch service, as well as an incorrect map prepared by the county engineer's office, resulted in a delay in the arrival of an ambulance, which contributed to the death of a minor in need of medical attention. Thus, that case highlights the importance of the function of designating street numbers in relation to the health, safety and welfare of the public. As such, we conclude that the function of designating street numbers is governmental in nature.

{¶18} Next, we must determine whether any of the exceptions to immunity apply. The exceptions to immunity are set forth in R.C. 2744.02(B)(1)-(5), which provides as follows:

"(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;

(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for

injury, death, or loss to person or property when civil liability is

expressly imposed upon the political subdivision by a section of

the Revised Code, including, but not limited to, sections

2743.02 and 5591.37 of the Revised Code. Civil liability shall

not be construed to exist under another section of the Revised

Code merely because that section imposes a responsibility or

mandatory duty upon a political subdivision, because that

section provides for a criminal penalty, because of a general

authorization in that section that a political subdivision may sue

and be sued, or because that section uses the term "shall" in a

provision pertaining to a political subdivision."

Here, the exception contained in R.C. 2744.02(B)(2) does not apply as we

have already determined the function at issue is governmental rather than

proprietary.  Further, we find none of the remaining exceptions are

applicable.  Having determined none of the exceptions under R.C.

2744.02(B) are applicable, we need not perform an analysis of the defenses

and immunities provided to a political subdivision by R.C. 2744.03(A).

Accordingly, we affirm the trial court's decision to the extent that it

determined Appellees were entitled to immunity pursuant to R.C. 2744.02

with respect to carrying out the function of designating street numbers.

{¶19} We next consider whether Board's delegation of authority to Shaw to designate street numbers was a proper delegation of authority. As set forth above, Board was vested with the authority to designate street numbers pursuant to R.C. 303.021. Appellants contend that Board, and only Board, had the authority to perform this function and that the delegation of this function to Shaw was improper. Based upon the following, we reject Appellants' argument.

{¶20} As set forth above, *Lyons v. Teamhealth Midwest Cleveland, et al.*, supra, involved the question of whether the county's provision of emergency dispatch services was a governmental or a proprietary function, and whether the county had sovereign immunity related to the performance of that function. Also addressed as part of the analysis was the fact that the county did not have an ambulance service and thus contracted with private companies to respond to emergency calls. Id. at ¶ 5. Thus, the court was faced with the question of "whether the County can maintain their statutory immunity for retaining limited involvement in communicating calls for emergency help to the private entity through the provision of dispatch services." Id. at ¶ 45.

{¶21} In response to the issue raised, the *Teamhealth* court reasoned as follows:

"This court has previously held that 'R.C. 2744.01(C) does not

exclude from the definition of governmental functions those

functions sometimes performed by private entities for political

subdivisions. In fact, many of the specifically enumerated

governmental functions set forth in R.C. 2744.01(C)(1) are

commonly performed by private entities for political

subdivisions, including, but not limited to, ambulance services,

* * *. Where a service is specifically defined as a governmental

function, what entity actually performs them or a part of them

on behalf of a political subdivision has no bearing on their

status as governmental pursuant to R.C. 2744.01(C)(1).'

*McCloud v. Nimmer* (1991), 72 Ohio App.3d 533, 595 N.E.2d

492, emphasis added."  Id. at ¶ 46.

Thus, in *Teamhealth*, the performance of a governmental function on behalf

of the county by a private entity for profit was at issue and it was determined

that such a structure did not alter the classification of the function as

governmental, nor did it destroy the political subdivision's immunity from

liability in relation thereto.  Id.

{¶22} Here, the governmental function of designating street numbers

was delegated to Shaw, as county engineer, an actual employee of the

political subdivision, not a private entity.  It appears from the record that the

County initiated the development of a countywide rural numbering system

on February 20, 1975, via a "Proposal/Agreement/Resolution Assigning

House # To County Engineer," whereby Board entered into an agreement

with a private engineering consulting firm.  At some point thereafter, the

function of designating street numbers was delegated to the Hocking County

Engineer's Office.  We find nothing improper with respect to this delegation

of authority and have located no prohibition against this practice.

{¶23} Further, and much like the trial court, we find nothing improper

with respect to the County Engineer's system of designating street numbers

only after driveways have been established.  R.C. 303.021 provides no

specific guidance as to how Board should perform the function of

designating street numbers.  The record reflects that Shaw's office has a

formal written policy which covers "Driveway Permitting and Addressing

On County And Township Roads In Hocking County."  Additionally, there

is no evidence in the record which suggests that this policy was not

uniformly applied to any and all persons requesting the designation of a

street number.

{¶24} In summary, we have determined that the Hocking County

Board of Commissioners is a political subdivision entitled to immunity

pursuant to R.C. 2744.01, which immunity extends to William Shaw, the elected County Engineer, an employee of the political subdivision. Additionally, we have determined that there was nothing improper with respect to Board's decision to delegate their authority to perform this function to Shaw, as County Engineer. Likewise, we have determined that Shaw's policy of requiring a driveway to be in place prior to designating a street number was a reasonable policy implemented in connection with carrying out the function of designating street numbers. Further, as we have determined that the function at issue is a governmental function for which immunity attaches, that Board's delegation of the performance of this function to Shaw did not destroy the governmental nature of the function or the grant of immunity, and that none of the exceptions to immunity applies, we affirm the trial court's grant of summary judgment in favor of Appellees on the basis of the doctrine of sovereign immunity. Finally, although Appellants contend an issue exists related to alleged animosity between Mr. Nihiser and William Shaw, we find even if such an issue remains, it is not a genuine issue of material fact which would preclude summary judgment.

{¶25} Thus, we conclude that the trial court properly granted Appellees' motion for summary judgment. Accordingly, the assignments of

error raised by Appellants are overruled and the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. & Hoover, J.: Concur in Judgment Only.


For the Court,

BY:  _____
Matthew W. McFarland
Presiding Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**