[Cite as *Ohio Bell Tel. Co. v. Cleveland*, 2017-Ohio-5814.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 104974

---

# THE OHIO BELL TELEPHONE COMPANY

### PLAINTIFF-APPELLEE

vs.

# CITY OF CLEVELAND

### DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-848165

**BEFORE:** Jones, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 13, 2017

**ATTORNEYS FOR APPELLANT**

Barbara A. Langhenry
Director of Law

BY: Jerome A. Payne
Assistant Director of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

William H. Hunt
Lydia E. Cancilla
W.H. Hunt Legal Group L.L.C.
24500 Center Ridge Road, Suite 170
Westlake, Ohio 44145

Edward L. Bettendorf
45 Erieview Plaza, Room 1441
Cleveland, Ohio 44114

LARRY A. JONES, SR., J.:

**{¶1}** Defendant-appellant, the city of Cleveland, appeals from the trial court's judgment denying its motion for summary judgment based on immunity. For the reasons that follow, we affirm.

**Background**

**{¶2}** Plaintiff-appellee, The Ohio Bell Telephone Company (d.b.a. "AT&T Ohio"), initiated this action against the city of Cleveland, alleging damage to the company's utility line as a result of work performed by the city. Specifically, in February 2014, the city was involved in an excavation project on Walter Road in North Olmsted, Ohio; the project was to repair the city's water main.

**{¶3}** On February 17, an employee from the city's water department called the Ohio Utilities Protection Service ("OUPS") to have the area "marked" for underground utilities. The worker indicated that the work would begin on February 20, and he did not indicate that it was an emergency situation. The area was marked by the United States Infrastructure Corporation ("USIC") on February 19; the ground was snow covered at the time, so USIC made the markings by spray painting on the snow and placing flags. The city began its work on February 24. The work report from that day stated that work began at 9:05 a.m. as follows:

> Arrive. Safety. Water showing on both sides of street. Ran test rods in ground at out measurement, near drainage culvert. Can't get rods down passed [sic] 4½ feet deep. Try slicing bar and sled [sic] hammer. Unable to get down in hard ground. Made follow up. Job not complete.

**{¶4}** The report indicates that the city's crew left the site at 12:40 p.m. Twenty

minutes prior to their departure, the crew's supervisor called OUPS to request remarking of the site. The supervisor stated that he was aware that there were other underground utilities in the area, and that area was visibly marked when the crew arrived. Documentation regarding the remarking request stated, "update for previous tkt. * * * reason for update: Requesting remarkings[,] crew is in route — especially concerned with gas and phone lines."[1] USIC went back to the site that same day, February 24, at approximately 1:45 p.m.

{¶5} AT&T contends that its utility line was damaged by the city in the course of its work and, therefore, the company brought this action against the city. In Count 1 of its complaint, the telephone company alleged that the city's actions were negligent and reckless; and in Count 2, it alleged that the city's actions were wanton and reckless.

{¶6} The city filed a motion for summary judgment, contending that, under R.C. Chapter 2744, it was immune from liability; AT&T opposed the motion. The trial court denied the city's motion, finding as follows:

> There are genuine issues of material fact concerning whether defendant city of Cleveland was negligent in performing a proprietary function of maintaining and operating its municipal water supply system under R.C. 2744.02(B)(2) and whether defendant city of Cleveland exercised its discretion in a wanton or reckless manner under R.C. 2744.03(A)(5).

{¶7} The city now appeals, contending in its sole assignment of error that the trial court erred in denying its motion for summary judgment.

---

[1]The statement "crew is in route" conflicts with other evidence in the record that demonstrates that at the time the request for remarking was made, the crew had already been at the site and attempted to do the work.

**Law and Analysis**

{¶8} Ordinarily, a decision denying a party's motion for summary judgment is not a final, appealable order. But under R.C. 2744.02(C), "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." *See also Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, ¶ 13.

**Summary Judgment Standard**

{¶9} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12.

{¶10} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15.

{¶11} In ruling on a motion for summary judgment, the court must construe the

record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293.

{¶12} Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 Ohio App. LEXIS 3410, (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at *id.*; Civ.R. 56(E).

**R.C. Chapter 2744: Governmental Immunity**

{¶13} "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998); *see also Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070,

865 N.E.2d 845, ¶ 10. The first tier involves determining whether the political subdivision is generally immune from liability under R.C. 2744.02(A)(1). *Elston* at *id.*; *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 12.

{¶14} Once immunity is generally established, the "second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply." *Hortman at id.* Only when one of the exceptions listed in R.C. 2744.02(B) applies do courts move to the third tier. *Terry v. Ottawa Cty. Bd. of Mental Retardation & Dev. Disabilities*, 151 Ohio App.3d 234, 2002-Ohio-7299, 783 N.E.2d 959, ¶ 13 (6th Dist.); *Dolan v. Glouster*, 173 Ohio App.3d 617, 2007-Ohio-6275, 879 N.E.2d 838, ¶ 17 (4th Dist.). If an exception to the general immunity provision does apply, "under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies." *Hortman* at *id.*

{¶15} The parties do not dispute that the city of Cleveland is a political subdivision subject to immunity under R.C. Chapter 2744. Instead, the dispute here focuses on whether the exception in R.C. 2744.02(B)(2) applies.

{¶16} Under R.C. 2744.02(B)(2), a political subdivision is subject to liability for the negligent performance of acts by their employees with respect to proprietary functions of the political subdivision. Thus, before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish the following: (1) the elements required to sustain a negligence action, that is, duty, breach of duty, proximate cause, and damages; and (2) that the negligence arose out of a proprietary function. *Williams v.*

*Glouster*, 4th Dist. Athens No. 10CA58, 2012-Ohio-1283, ¶ 17. The "establishment, maintenance, and operation of a utility" constitutes a proprietary function. R.C. 2744.01(G)(2)(c).

**The City's Summary Judgment Motion**

{¶17} In its motion for summary judgment, the city contended that, as evident through discovery, the phone company did not have any "expert or technical testimony that sets forth any standard of care or method of a water supply system in modern use by ordinarily prudent cities in the operation of such systems and how such care or method was violated." According to the city, the only element of a negligence claim that AT&T could prove was injury.

{¶18} In support of its motion, the city submitted the following evidentiary materials: (1) an affidavit of Joseph Dressman ("Dressman"), the water pipe repair supervisor from the city's division of water; (2) the work order authorizing the city's work at the site; (3) the damage report from the division of water; and (4) a letter/report to the city's legal department from Peter Zwick.

{¶19} In his affidavit, Dressman averred that city employees were assigned to find water leaks in the water main on the day in question. The employees were trained to "drop test rods down to the underground pipe, * * * with the intention to make contact with [the] water main." Dressman averred that the employees attempted to drop the rods, but "were unable to get the test rods on the water main due to what we [thought] was the hardness of the ground."

**{¶20}** Dressman averred that he personally observed that the telephone company's lines were directly over the city's water main, which made it "extremely difficult" to locate and repair the leak to the city's water main and lines. According to Dressman, the city's work was "reasonably undertaken and performed to the standard in which [the city] train[s] [its] employees at the Division of Water, [and it] complied with the standard of care of a reasonable water utility."

**{¶21}** The city's damage report also indicated that the telephone company's duct was "on top of" the city's water main, that the duct "should have never been installed this way," and that the placement of the duct made it "virtually impossible" to work on the city's water main.

**{¶22}** In the letter/report from Zwick, the engineer stated the following: (1) that based on his review of weather records, the "first markings likely had been obscured by snow melting on the ground"; (2) the water department's digging methods were appropriate for the situation; (3) AT&T's line was directly on top of the water main — which was "not good construction practice" — and that placement on the telephone company's utility made it impossible to not disturb it when attempting to repair the city's water main; and (4) that much of the damage to AT&T's utility line was "likely" caused by AT&T's excavator when it dug to make repairs to the telephone utility. Zwick stated that his statements and conclusions were "expressed to a reasonable degree of engineering certainty." **AT&T's Opposition**

**{¶23}** In opposition to the city's summary judgment motion, AT&T contended that

it was reckless for the city to dig without adequate utility markings, and that the city should have ordered a remarking of the area prior to doing any work at the site. The telephone company submitted, in part, the affidavit of Kyle Peyton ("Peyton"), an employee of USIC Locating Services, and the affidavit of Steve Roden ("Roden"), an AT&T manager.

{¶24} USIC Locating Services is a company that, among other things, provides locating and marking services for Ohio utility companies. Peyton averred that USIC provided marking services for the subject area on February 19, 2014, and received notification on February 27 that AT&T's underground utilities at the site had been damaged.

{¶25} Roden averred that, on February 24, 2014, after receiving multiple complaints about customer outages, he drove to the subject site and observed "holes in the ground near spray painted underground utility markings and water bubbling up from some holes and going down into others." He contacted AT&T workers and construction contractors to come to the site and watched as the site was dug up. Roden further averred that the "water main was below and slightly to the left of the Ohio Bell Conduit when looking down from the north, [and that] although a slight portion was still under the duct run, the majority was not. Furthermore, the damage to Ohio Bell's cable was on the right side of the duct run." According to Roden, the "damage was consistent with the holes he saw on the surface."

*Ohio Bell Telephone Co. v. Cleveland*, **8th Dist. Cuyahoga No.98683, 2013-Ohio-270**

{¶26} Upon review, we find that the instant case is on point with *Ohio Bell Telephone Co. v. Cleveland*, 8th Dist. Cuyahoga No. 98683, 2013-Ohio-270.   In the 2013 *Ohio Bell* case, city workers did emergency excavation work, which included the insertion of test rods, to repair a water main leak.   The telephone company alleged that, during the course of the city's work, the city damaged the telephone company's utilities and caused flooding in its nearby company office.   The company also alleged that the city was aware that there were other utility lines in the area.

{¶27} The trial court denied the city's motion for summary judgment based on immunity, and this court affirmed finding that the city's determinations as to the drilling were "more than routine maintenance decisions requiring little judgment or discretion, [but] the record reflects genuine issues of material fact as to whether this discretion was exercised in a wanton or reckless manner."   *Id.* at ¶ 16.   In the 2013 *Ohio Bell* case, this court noted the following facts, which are similar to the within case:

> Ohio Bell alleges that the City caused damage to its property and underground utility facilities by failing to maintain reasonable clearance while drilling and by failing to protect the visible markings of the underground utility facilities and otherwise failing to excavate in a careful and prudent manner.   Ohio Bell submitted evidence establishing that test holes were drilled in the area above the damaged PVC conduit.   Several individuals observed damage consistent with the drill holes and the type of damage that could be caused by the type of drill that was used.   Upon our review, we find the record presents genuine issues of material fact pertaining to whether the City's conduct was negligent and whether it was the cause of the damage to Ohio Bell's property.

*Id.* at ¶ 20.

{¶28} Here, Ohio Bell also alleged that the city caused damage to its utilities by

"negligently and recklessly fail[ing] to maintain reasonable clearance between Plaintiff's underground utility facilities and the cutting edge or point of powered equipment, fail[ing] to preserve and protect the markings of the approximate location of Plaintiff's underground facilities and otherwise fail[ing] to excavate in a careful and prudent manner."

{¶29} The record demonstrates that the city workers were aware that there were other underground utilities in the subject area, and there is evidence in the record that creates a genuine issue of material fact as to whether the city's actions were negligent, reckless, or wanton, and whether it was the cause of the damage to the telephone's company's property.

{¶30} In light of the above, the city's sole assignment of error is not well taken.

{¶31} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MELODY J. STEWART, P.J., and

SEAN C. GALLAGHER, J., CONCUR